**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| KIM A. SHAFFER as Trustee on Behalf of Ruth A. Draut Revocable Trust, | No. 19-CV-4014-CJW-MAR |
| Plaintiff/Counterclaim Defendant, | |
| vs. | **ORDER** |
| MARK TEWES and BRYAN TEWES, | |
| Defendants/Counterclaim Plaintiffs. | |

_____

TABLE OF CONTENTS

I.     FACTUAL BACKGROUND ............................................................. 2

II.    PROCEDURAL BACKGROUND ...................................................... 5

III.   SUMMARY JUDGMENT STANDARD ............................................. 7

IV.   DISCUSSION ................................................................................. 9

     A.    Choice of Law ....................................................................... 9

     B.    Parties' Arguments................................................................. 9

     C.    Trust Formalities ................................................................. 11

          1.    Direct in Writing........................................................ 14

          2.    Evidence Draut was Acting as a Trustee.............................. 16

     D.    Other Defenses ................................................................... 20

1.      Good Faith Dealing………………………………………………20

2.      Passed Good Title ………………………………………………22

3.      Ratification………………………………………………………23

4.      Estoppel …………………………………………………………24

        a.      Promissory Estoppel …………………………………25

        b.      Equitable Estoppel……………………………………27

V.      CONCLUSION …………………………………………………………28

This matter is before the Court on plaintiff's Renewed Motion for Partial Summary Judgment. (Doc. 42). Defendants timely resisted plaintiff's motion (Doc. 47) and plaintiff filed a timely reply (Doc. 48). Neither party requested oral argument and the Court considers this matter fully submitted. For the following reasons, plaintiff's Renewed Motion for Partial Summary Judgment (Doc. 42) is **granted**.

## I.      FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted. The Court will consider additional facts as they become relevant to the Court's analysis.

This matter involves the validity of a lease for farmland. In July 1997, Ruth A. Draut ("Draut") created the Ruth A. Draut Revocable Trust ("Trust"). (Docs. 42-2, at 1; 47-3, at 1). Draut funded the Trust by transferring parcels of real property she owned to the Trust. (*Id.*). On May 20, 1998, Draut transferred farmland she owned in Clay County, Iowa ("Clay County property") to the Trust in fee simple via a warranty deed. (*Id.*, at 1-2). All property in the Trust was to be administered in accordance with the Trust's terms. (*Id.*, at 2). Draut served as the Trust's original trustee and designated

Case 5:19-cv-04014-CJW-MAR   Document 49   Filed 06/10/20   Page 2 of 28

Kim A. Shaffer ("plaintiff") to serve as the successor trustee when Draut became unwilling or unable to perform her duties. (Docs. 42-2, at 3; 47-3, at 2). On July 20, 2018, Draut passed away at the age of 85. (*Id.*). Plaintiff took over as Trustee following Draut's death. (Doc. 32, at 1).

Defendants began farming the Clay County property in 1980. (Doc. 33-1, at 8).[1] When they first started farming the Clay County property they did so on a custom basis. (*Id.*). They continued farming the land on a custom basis until Draut's husband, Glenn Draut, passed away. (*Id.*). After Glenn Draut passed away in 1997, defendants started renting the Clay County property on a cash basis. (*Id.*). The lengths of the leases varied and were renewed several times. (*Id.*). Each of the Clay County leases were presented to defendants by Draut without the number of years filled in. (*Id.*). The first two leases were each for six-year terms. (*Id.*). The next farm lease had a four-year term. (*Id.*). The following lease was for a three-year term ending with crop year 2017. (*Id.*).

On January 18, 2018, Draut asked defendants to come to her residence at a nursing home in Fairmont, Minnesota to sign a new lease for the Clay County property. (*Id.*, at 8-9). According to defendants, Draut initially prepared a lease for five years, but defendant Mark Tewes requested the lease be extended to seven years, which would take him up to the time of his retirement. (*Id.*). Draut agreed to the seven-year term. (*Id.*). The draft stated, in its entirety:

> Mark and Bryan Tewes of 1935 400th Street, Spencer, Iowa shall continue to rent my land for crop years 3/1/2018 thru 2/1/2025. This land is in Clay County and Clay Township near the town of Royal, Iowa. The description of this land being: W ½, NW ¼, Section 11, T 95 N, R 38 W of 5th P.M., and E ¼, N E ¼, Section 12, T 95 N, R 38 W of 5th P.M.

---

[1] The parties did not reiterate all relevant background facts in their statements of fact addressing plaintiff's Renewed Motion for Partial Summary Judgment. The Court will refer to the parties' statements of fact addressing plaintiff's first motion for partial summary judgment where necessary. *See* FED. R. CIV. P. 56(c)(3).

Case 5:19-cv-04014-CJW-MAR   Document 49   Filed 06/10/20   Page 3 of 28

> Proper Conservation methods of farming and weed control Shall be maintained.
> The yearly payment for this rented farm land shall be each Year by April 1st for the amount of $13,200.00.
>
> Renter's Signature _____ Date_____
> Renter's Signature _____ Date_____
> Landlor[d]/Landlady:_____ Date_____

(Doc. 42-3, at 32). The dates and amount of rent were left blank and filled in by hand when the lease was signed, as had been the practice with previous leases. Brian and Mark Tewes each signed one of the "Renter's Signature" lines and Draut signed on the line reserved for "Landlor[d]/Landlady." Each party dated the lease January 18, 2018. Defendants paid Draut $13,200 for the 2018 crop year before Draut passed away. (Doc. 47-4, at 50).

Draut also asked Kim Wubbena ("Wubbena") to be present to notarize the lease. (Doc. 48-1, at 7-8). Wubbena is a paralegal who works at plaintiff's law firm. (*Id.*, at 1). Draut had hired plaintiff's law firm to perform her legal services for "many years." (Doc. 47-4, at 6). In 2015, plaintiff took over Draut's legal work from another partner at the firm as part of an effort to redistribute work. (*Id.*). Most of the legal work plaintiff performed for Draut was related to tax preparation and estate planning. (*Id.*). Wubbena also began doing work for Draut in 2016. (*Id.*, at 7). Wubbena would regularly visit Draut at Draut's residence to help Draut get mail from her post office box, help organize her bills, and help organize her tax work. (*Id.*, at 8). Wubbena thought Draut considered Wubbena a "trusted confidante." (*Id.* at 12). Wubbena was present at the lease signing but arrived after the Tewes and did not recall any conversation about the lease. (*Id.*, at 9). Wubbena notarized the lease signed on January 18, 2018. (Doc. 48-1, at 8).

4

## II.    PROCEDURAL BACKGROUND

This case involves three related matters.  First, on April 8, 2019, plaintiff filed suit against defendants in the United States District Court for the Northern District of Iowa.  (Doc. 1).  Plaintiff alleged claims for failure to follow trust formalities, undue influence, unconscionability, unjust enrichment, and trespass.  (*Id.*, at 5-8).  Second, on the same day plaintiff filed suit against defendants, plaintiff also filed suit against Allan and Wanda Garloff (collectively, the "Garloffs") in this Court.  (Doc. 1, No. 19-CV-4013).  Plaintiff's action against the Garloffs involved similar facts and raised the same claims for failure to follow trust formalities, undue influence, unconscionability, unjust enrichment, and trespass.  (*Id.*, at 5-8).  Third, on June 11, 2019, the Garloffs filed a petition for a declaratory judgment in the Iowa District Court for Dickinson County.  (Doc. 2, No. 19-CV-4040).  The Garloffs sought a declaration from the Iowa District Court that their agricultural lease was valid.  Plaintiff removed the state court action to this Court on the ground that the Court has diversity jurisdiction under Title 28, United States Code, Section 1332.  (Doc. 1, at 1, No. 19-CV-4040).

On October 1, 2019, Magistrate Judge Mark A. Roberts requested position statements from plaintiff, defendants, and the Garloffs regarding consolidation of the above matters.  (Doc. 19).  Judge Roberts noted that the three cases involved similar parties, disputes over the validity of similar farm leases, and similar claims.  (*Id.*, at 2).  The Order noted, however, that two of the matters involved different parcels of real estate and different leases.  (*Id.*).  The parties did not object to consolidating 19-CV-4013 and 19-CV-4040, the two cases involving the Garloffs.  (Doc. 23).  Plaintiff did, however, object to this case, 19-CV-4014, being consolidated with the other two cases involving the Garloffs because the cases involved several factual differences.  (Doc. 22).  The Court ordered the two Garloff cases to be consolidated but ordered this case to proceed independently.  (Doc. 23).

On July 16, 2019, the Court issued a Scheduling Order with various deadlines, including a March 9, 2020 discovery deadline, and an April 8, 2020 dispositive motion deadline. (Doc. 11). On December 10, 2019, plaintiff moved for partial summary judgment and asked the Court for a declaratory judgment finding the lease void. (Doc. 24). According to plaintiffs, a decision on the validity of the lease would "dispose of the bulk of this case[.]" (*Id.*, at 2). Defendants resisted plaintiff's motion. (Doc. 28). Alternatively, defendants asked for the Court to delay consideration of plaintiff's motion to permit defendants the opportunity to complete discovery. (*Id.*).

On February 11, 2020, the Court denied without prejudice to reassertion plaintiff's motion for partial summary judgment. (Doc. 36). In its Order, the Court found Draut had reserved the right to convey the Clay County property during her lifetime. (*Id.*, at 9). The Court further found that the Trust document established how Draut could permissibly convey the Clay County property. (*Id.*). The Court read the Trust's provisions to mean Draut could transfer the property in two possible ways. (*Id.*). First, Draut could "direct in writing the retention, purchase, sale, or transfer of property of the trust." (*Id.*). Because the Trust, and not Draut, had legal title to the Clay County property, however, Draut could not lease the property in her individual capacity. (*Id.*). Instead, the phrase "direct in writing" gave Draut the authority to tell the Trust or trustee, in writing, what to do with the property. (*Id.*). Second, Draut could enter the lease in her role as trustee. (*Id.*, at 10).

Given the Court's interpretation of the Trust's terms, the Court found that defendants may be able to show the enforceability of the lease. Defendants could either provide evidence that Draut directed the Trust or trustee in writing to lease the property to them, or they could produce evidence Draut was acting as the trustee when she entered into the lease. (*Id.*, at 9-10). Thus, because defendants could conceivably find evidence during discovery, the Court allowed defendants to complete discovery before ruling on

the merits of plaintiff's arguments. The Court's Order did not discuss the merits of defendants' alternative theories and defenses, and instead found it appropriate to wait until discovery closed and consider all the issues at once.

Discovery closed on March 9, 2020, and plaintiffs now renew their motion for summary judgment. The case is currently scheduled for a jury trial to commence on September 8, 2020. (Doc. 12, at 1).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," Wood v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the

7

material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). When considering a motion for summary

8

judgment, the court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## IV. DISCUSSION

### A. Choice of Law

As a preliminary matter, the Court first considers whether there are any issues related to the choice of law. The parties cited to both the Minnesota and Iowa trust codes in their briefs for the initial summary judgment motion. (Docs. 24, 27). The Court advised the parties to include a choice of law discussion if plaintiff chose to renew his motion for partial summary judgment after the close of discovery (Doc. 36, at 8-9 n.1), and the parties included a choice of law discussion. The parties agree that Iowa law generally applies because the Clay County property is in Iowa. (Docs. 42-1, at 2; 47-1, at 4). Specifically, Iowa law governs the meaning and effect of the Trust's terms as they relate to the real property in the Trust, including the Clay County property. IOWA CODE § 633A.1108(2)(c). According to the parties, Minnesota law is relevant to the extent it governs the internal affairs of the trust. (Docs. 42-1, at 2-3; 47-1, at 4).

The distinctions make little difference, however, because the relevant provisions of the Iowa Trust Code and the Minnesota Trust Code are similar. (Doc. 42-1, at 3). When the relevant legal principles are the same in both states it presents "what has come to be called a false conflict" and the court need not resolve the choice of law issue. *A.P. Leonards v. So. Farm Bureau Cas. Ins. Co.*, 279 F.3d 611, 612 (8th Cir. 2002). Thus, the Court will largely cite to Iowa law, but will include citations to parallel Minnesota trust provisions when relevant.

### B. Parties' Arguments

Plaintiff argues the Court should grant summary judgment in its favor on plaintiff's failure to follow trust formalities claim. Plaintiff argues that Draut did not have the

authority to lease the farmland to defendants. (Doc. 24-1, at 1).[2] Plaintiff asserts that the land was held in the Trust when the lease was signed and thus only the trustee, acting on behalf of the Trust, could lease the land. (*Id.*, at 6). Plaintiff recognizes that Draut was the trustee at the time of the conveyance. (*Id.*, at 1). Plaintiff, however, argues Draut executed the lease in her individual capacity and not in her role as the trustee. (*Id.*). For example, Draut signed the lease as "landlord" and referred to the property as "my land." (*Id.*, at 3). Draut used these same designates when leasing the Clay County property to Mark and Debra Tewes before the creation of the Trust. (Doc. 47-4, at 33-34). Because Draut allegedly signed the lease in her individual capacity, she was conveying land that she did not own or have any right to convey. In short, plaintiff argues that because Draut could not convey what she did not own, the lease is invalid. (Doc. 24-1, at 4). Because there is no evidence that Draut either issued a written direction nor acted in her official capacity as trustee when she signed the lease, plaintiff argues the Court should grant its request for a declaratory judgment finding the lease dated January 18, 2018, void and of no effect. (Doc. 42-1, at 4-8).

Defendants do not disagree that only the titleholder can convey property. Defendants, however, argue that Draut properly conveyed a leasehold interest in the Clay County property. First, defendants argue that in cases where the grantor and the trustee are the same person—as is the case here—the requirement that the individual direct herself as trustee in writing to convey the property is relaxed or eliminated. (Doc. 47-1, at 9-11). Second, defendants argue there is evidence Draut was acting as trustee when she

---

[2] The parties raised their primary arguments in their original Motion for Partial Summary Judgment (Doc. 24) and the corresponding resistance (Doc. 30). The Renewed Motion for Partial Summary Judgment primarily addresses the lack of additional facts determined in discovery. (*See generally* Doc. 42). Thus, the Court will refer to both the first Motion for Partial Summary Judgment and the Renewed Motion for Partial Summary Judgment when discussing the parties' arguments.

signed the lease with defendants. (*Id.*, at 11-12). Next, defendants argue Iowa law presumes the authority of the grantor in a conveyance of real estate. (*Id.*, at 4-8). Fourth, defendants assert Iowa law protects defendants in their good faith dealings with Draut. (*Id.*, at 8-9). Finally, defendants assert that even if Draut was required to act as a trustee, ratification and estoppel prevent voiding the lease. (*Id.*, at 12).

The Court will consider each of these arguments in turn.

### C.    Trust Formalities

In Iowa, "[o]n acceptance of a trust, the trustee shall administer the trust according to the terms of the trust and according to [the Iowa] trust code, except to the extent the terms of the trust provide otherwise." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 878 F.3d 648, 651 (8th Cir. 2018) (quoting IOWA CODE § 633A.1105)). "The terms of a trust shall always control and take precedence over any section of this trust code to the contrary." IOWA CODE § 633A.1105. Further, under Iowa law "interpretation of a trust is guided by the intent of the testator." *Corrado*, 878 F.3d at 652 (quoting *In re Steinberg Family Living Tr.*, 894 N.W.2d 463, 468 (Iowa 2017)). Iowa courts "determine intent based on the language of the trust itself, utilizing the ordinary and usual meaning of the words included." *In re Steinberg*, 894 N.W.2d at 468.

Similarly, the Minnesota Trust Code provides that, except in limited circumstances, "[t]he terms of a trust prevail over any provision of this chapter . . .[.]" MINN. STAT. § 501C.0105(b). Like Iowa courts, Minnesota courts' "purpose in construing a trust agreement is to ascertain and give effect to the grantor's intent." *In re Pamela Andreas Stisser Grantor Tr.*, 818 N.W.2d 495, 502 (Minn. 2012). "When the trust agreement is unambiguous, [Minnesota courts] ascertain the grantor's intent from the language of the agreement, without resort to extrinsic evidence." *Id.* Thus, to the extent there is any disagreement about which state's law applies, both Minnesota and

11

Iowa law provide that the trust's language is binding and that courts ascertain the meaning of the trust by examining the trust's unambiguous language.

In relevant part, the Trust agreement provides:

> The following powers and rights are reserved by me during my life, to be exercised by me without the consent or participation of the trustee or any beneficiary of the trust:
>
> * * *
>
> 6. To direct in writing the retention, purchase, sale or transfer of property of the trust. My trustee shall follow my written directions delivered to the trustee if reasonably possible. My trustee shall not be liable to anyone for loss as a result of following such directions. My trustee can act without such written directions.

(Doc. 42-3, at 1-2).

The plain language of the Trust indicates that Draut intended to retain the right to convey the trust property during her lifetime. After Draut conveyed the Clay County property to the trust via a warranty deed in 1998, however, she no longer held legal title to the property individually. *See Swenson v. Nickaboine*, 793 N.W.2d 738, 744 (Minn. 2011) ("[I]t is a basic principle of trust law that a trustee holds legal title to trust property."); *NFO Members' Custodial Account v. Beneficiaries of Aforesaid Tr.*, 255 N.W.2d 162, 164 (Iowa 1977) ("A trust ordinarily exists when legal and equitable title are separated with the person holding legal title [(the trustee)] obligated to hold and administer the property for the benefit of the one holding equitable title [(the beneficiary)]."); s*ee also* RESTATEMENT (SECOND) OF TRUSTS §§ 2-3 (1959). An individual cannot convey what they do not own. *See Mitchell v. Hawley*, 83 U.S. 544, 550 (1872). Thus, because Draut conveyed the Clay County property into the Trust, Draut no longer had legal title to the property as an individual and she could not lease the property in her individual capacity. Instead, the plain language of the Trust describes two situations in which the Trust permitted Draut to convey Trust property.

12

First, the Trust document contains a reserved rights provision ("the provision") that states Draut could "direct in writing the retention, purchase, sale or transfer of property of the trust." (Doc. 42-3, at 4). As the Court explained in its prior order, the Court finds the phrase "direct in writing" means that Draut had the authority to tell the trustee, in writing, how to dispose or convey the property. (Doc. 36, at 9). Because Draut in her capacity as trustee, and not Draut individually, had legal title to the Clay County property, Draut could not lease the property in her individual capacity. (*Id.*). Also, the sentence following the "direct in writing" statement provides that the "trustee shall follow [the] written directions delivered to the trustee when reasonably possible." (Doc. 42-3, at 4). Because the instruction for how the trustee shall proceed follows directly after the writing requirement, a reasonable interpretation of the Trust provision is that Draut was required to provide written direction to the trustee on how to convey the property. In cases where the settlor who retains the right to transfer property is also the trustee, the distinction appears frivolous and it may seem unnecessary to require Draut to direct herself in writing about whether to convey the property. But trust formalities are important, and the separation of the legal and equitable title are fundamental to the existence of a trust. In exchange for receiving the benefits of a trust, a settlor is expected to follow specific procedures that are designed to define and distinguish property and rights. *See* RESTATEMENT (SECOND) OF TRUSTS § 25 cmt. a (1959) ("[N]o trust is created unless [the settlor] manifests an intention to impose duties which are enforceable in the courts.").

Second, the Court understands the provision to mean Draut could lease the Clay County property in her capacity as trustee. The Trust provision states that the "trustee can act without such written directions" in transferring property. (Doc. 42-3, at 4). In other words, the trustee can convey the property without receiving any directions, in writing, from Draut. Here, Draut was also the trustee and thus, did not have to receive

13

written direction from herself to convey the property. But, the language of the Trust provision reserves this right for the trustee, not Draut as an individual. Again, the distinction between Draut as a trustee and an individual is narrow, but important. Draut did not hold legal title to the property as an individual, nor did the trust provision allow her to transfer legal title to the property as an individual. As such, there must be some evidence and indication that she was acting as a trustee if she conveyed the property without written direction from herself.

### 1. Direct in Writing

As the Court previously explained, Draut retained the right to convey property by directing the trustee in writing for the retention, purchase, sale, or transfer of trust property. Stated differently, Draut could transfer title to the property if there was a writing that directed the trustee to convey the property.

Neither party claims discovery uncovered any written direction from Draut in her individual capacity instructing Draut in her capacity as trustee to convey the property to defendants via the lease. Plaintiff argues that because there was no written direction, the inquiry ends there. (Doc. 42-1, at 5). Defendants, however, argue the lack of written direction is not fatal to the claim for two reasons. First, defendants argue that when the sole trustee and the lessor are the same person, as was the case here, the requirement of a written direction from herself should be relaxed if not eliminated. (Doc. 47-1, at 9-11). Second, defendants allege plaintiff should be estopped from enforcing the written direction requirement. (*Id.*, at 10-11). The Court will consider defendants' argument that the written requirement was relaxed or eliminated here and will consider defendants' estoppel argument alongside defendants' other defenses in Section IV(D)(3) below.

The Court turns first to defendants' argument that the written requirement is relaxed or eliminated when the lessor and the trustee are the same person. Defendants cite state court decisions from Virginia and California in support of their argument. (*Id.*,

at 10) (citing *Austin v. City of Alexandria*, 574 S.E.2d 289 (Va. 2003); *Galdjie v. Darwish*, 113 Cal. App. 4th 1331 (Cal. Ct. App. 2003)). Although the Court may consider these cases as persuasive authority for defendants' proposition, they are not binding on this Court or the highest courts of Iowa or Minnesota. Indeed, defendants do not cite any Iowa (or Minnesota) caselaw consistent with the relevant propositions in those cases. Also, "[c]ases involving construction of trusts necessarily turn on their own peculiar facts thereby diminishing the precedential value of previous case law." *Brenneman v. Bennett*, 420 F.2d 19, 24 (8th Cir. 1970). The cases defendants cite appear to support their argument, but largely consist of conclusory statements about the written direction requirement and do not include significant discussion or explanation.

In *Austin v. City of Alexandria*, the grantor of the trust at issue was also the trustee. 574 S.E.2d at 293. The Virginia Supreme Court stated: "Notice to the trustee of the Living Trust of the withdrawal of the property from that trust, on the facts of this case, is a non-issue." *Id.* The Virginia Supreme Court "accepted the contention that the notice requirements for withdrawal . . . ha[d] been satisfied." *Id*. There is no additional discussion about the writing requirement beyond this. Thus, although *Austin v. City of Alexandria* provides some support for defendants' argument, it is not binding on this Court and does not provide enough reasoning to persuade the Court to accept the holding without more.

*Galdjie v. Darwish* also involved an issue where the trust's grantor was also the trustee. 113 Cal. App. 4th 1331. In *Galdjie*, trustees contracted to sell a piece of real property to a buyer. *Id.*, at 1334. The trustees never transferred the property, however, because they claimed the buyer failed to timely meet the closing requirements. *Id.* at 1335. The buyer sued the sellers in their individual capacities for specific performance of the contract and the trial court decided in favor of the buyer. *Id.* at 1336. On appeal, the sellers claimed they could not be sued in their individual capacity because they were

15

acting as trustees on behalf the trust. *Id.* at 1337. The California Court of Appeals included a thorough discussion about the liability of a trustee versus the liability of an individual when the trustee and the grantor were the same person and indeed drew important distinctions between individuals and trustees. *Id.* at 1342-50. Regarding how a property should be conveyed, however, the court only briefly stated that "[c]ourts have held that where a trustee signs a contract of sale or deed without reference to his or her representative capacity, the contract or deed is enforceable against the trust." *Id.* at 1349. Thus, the *Galdjie* facts and issues, and the court's corresponding discussion, are not the same facts and issues in this matter.

Absent any contrary authority, the Court finds no reason to relax the written direction requirement. As the Court noted, the Trust document determines rights and obligations of the trustee and the beneficiaries under the Trust. IOWA CODE § 633A.1105. Also, it is the Court's duty to determine the settlor's intent based on the language of the instrument and give effect to all provisions of the trust when reasonably possible. *See In re Steinberg*, 894 N.W.2d at 468. Here, the Trust document unambiguously states that written direction to the trustee was required for Draut, acting in her individual capacity, to effect a transfer of the legal title to the Clay County property. Absent binding authority to the contrary, the Court cannot simply remove language from the Trust document because the Court finds it excessive or unnecessary. Thus, the Court will not relax the written direction requirement. The Court finds there is no genuine issue of fact that Draut, individually, did not direct herself, in her capacity as trustee, to enter into the lease with defendants.

### 2.    *Evidence Draut was Acting as a Trustee*

Second, the Court understands the provision to mean Draut could enter the lease in her role as the trustee. The provision states that in transferring property the "trustee can act without such written directions." (Doc. 42-3, at 4). The provision granting

Draut, in her role as a trustee, the power to dispose of land is supported by caselaw and the trust code. "[T]here are decisions holding that broad powers of sale or other disposition which were included in a trust resided in the trustee . . .." *See Brenneman*, 420 F.2d at 24-25 (citing several cases). Also, the trust code provides that in addition to the powers provided by the trust instrument a trustee can "[e]nter into a lease for any purpose as a lessor or lessee[.]" IOWA CODE § 633A.4402(10). To transfer property as a trustee, however, the lessor must be acting as the trustee. The clearest way to show that the lessor was acting as a trustee would be by including the word "trustee" or a reference to the Trust on the lease document. *See Austin*, 574 S.E.2d at 293 (finding the absence of any reference to the trust owning the property at issue determinative that the property was not properly conveyed under the trust's provisions). But the Court does not find that a signature including the word "trustee" is absolutely necessary. Indeed, none of the cases cited by plaintiff show an express "trustee" designation is required under Iowa law. Thus, the Court finds a party could conceivably show the lessor was acting as a trustee through other evidence. In short, if there is evidence that Draut signed the lease as trustee, the lease may be valid. Or, in the context of a motion for summary judgment, if there is a genuine issue of material fact whether Draut signed the lease as trustee, then summary judgment is inappropriate.

Defendants assert that discovery has disclosed a genuine issue of fact about whether Draut was acting as trustee when she signed the lease with defendants. Defendants argue that because Draut called Wubbena to be present at the lease signing, it is evidence that Draut was acting in her trustee capacity. (Doc. 47-1, at 11-12). According to defendants, "[t]here is no evidence that Ruth Draut ever signed a document *she* prepared as 'Trustee.'" (*Id.*, at 11) (emphasis added). Instead, many of the documents which Draut signed as "Trustee" were prepared by legal counsel. (*Id.*). For instance, Draut signed as "Trustee" on a Certificate of Trust, but that document was

17

prepared by plaintiff's law firm. (*Id.*). Plaintiff and Wubbena preformed legal work for Draut, which included reviewing her will and trust with her, preparing her taxes, and performing power of attorney duties. (*Id.*). On January 18, 2018, Draut called Wubbena and asked her to come to the meeting with defendants to witness and notarize the lease signing. (*Id.*). Wubbena testified that she did attend the lease signing and recorded the hours as billable. (Doc. 47-4, at 8-9, 53). According to defendants, these circumstances lead to a reasonable conclusion that Draut expected Wubbena would advise her on how to sign the documents to effectuate the lease. In other words, she was acting as a trustee when she called to have somebody present at the signing who had helped her fulfill her trustee duties in the past. Thus, defendants argue that even though her title of trustee was not noted on the lease itself, she had been acting in her role as trustee in executing the lease.

In ruling on a motion for summary judgment the "court must make all reasonable inferences in favor of the non-moving party[ ] but will not resort to speculation." *Hill v. Sw. Energy Co.*, 858 F.3d 481, 487 (8th Cir. 2017) (citation and internal quotation marks omitted). Here, defendants merely speculate that Wubbena's presence at the lease signing indicates Draut was acting in her capacity as trustee. First, there is no direct evidence that Wubbena's presence indicated that Draut was acted in her capacity as trustee. Wubbena was a paralegal at plaintiff's law firm, but the firm represented Draut both individually and as trustee of the Trust. Draut designated plaintiff as her personal power of attorney (Doc. 47-4, at 18-21), and Wubbena assisted plaintiff in discharging his duties in that role. Also, there is no evidence that Draut asked Wubbena how to sign the lease in her capacity as trustee. The record establishes that Draut only asked Wubbena "Can you come up and notarize a farm lease." (*Id.*, at 8). After Wubbena arrived, Draut and defendants signed the lease "right when [Wubbena] got there" or shortly thereafter. (*Id.*). There is nothing in the record from which a factfinder could infer that Draut sought or

expected any legal advice from Wubbena about the execution of the lease itself. (*Id.*). Indeed, the most reasonable interpretation of Draut's request for Wubbena's presence is for Wubbena to notarize the lease, a clerical and ministerial duty unrelated to the trust.

There is also no circumstantial evidence from which a factfinder could reasonably infer that Draut expected Wubbena to advise her how to enter the lease as trustee. First, there is no evidence that Wubbena ever directly provided Draut legal advice of any kind. Wubbena performed administrative tasks to assist plaintiff in providing legal advice to Draut. Wubbena's testified that her work for Draut included typing letters for attorneys, asking Draut's insurance agent to contact Draut, transporting documents between plaintiff's office and Draut's nursing home, picking up Draut's mail, and helping Draut organize her bills and tax documents. (*Id.*, at 7-8). When Draut had legal questions she and Wubbena would "discuss things that [Draut] wanted to talk to [plaintiff] about." (*Id.*, at 7). Also, the record establishes that Wubbena did not know what pieces of real property were in the trust, (*Id.*, at 10), and defendants cite to no facts indicate that Draut believed that Wubbena knew whether the Clay County property was in the Trust. Thus, there is nothing in the record to indicate that Wubbena ever provided Draut legal advice that was in any way similar to advising Draut about the distinction between her personal actions and actions as trustee. Without resorting to speculation, the Court cannot find that Wubbena's mere presence at the signing of the lease has any bearing on whether Draut was acting in her capacity as trustee when she executed the lease. Defendants cite to no other circumstantial evidence to support their argument that Draut was acting in her capacity as trustee. Thus, the Court finds there is not a genuine issue of material fact that Draut was acting in her individual capacity when she signed the lease with defendants.

### D.    Other Defenses

In addition to defendants' claim that Draut complied with the trust formalities, defendants make four additional arguments why there is a genuine issue of fact about the validity of the lease.  First, defendants argue the Iowa Trust Code protects them from Draut's mistake in following trust formalities because they were acting in good faith. Next, defendants assert the trustee's entire interest passed to them during the conveyance. Third, defendants argue Draut's continued acceptance of the cash rent payments ratified the lease.  Last, defendants argue plaintiff should be estopped from enforcing the trust formalities.

### 1.    Good Faith Dealing

Defendants argue the Iowa Trust Code contains protections for persons who deal in good faith with the trustee of a trust. (Doc. 47-1, at 8).  Defendants further argue that even if Draut improperly exercised her trustee powers by failing to identify that she was signing the lease as trustee, the lease should still be valid because defendants acted in good faith in signing the lease.  (*Id.*).  Thus, even if the Court finds there is no evidence that Draut was acting as trustee when she signed the lease, the Court should still find in favor of defendants because they are protected by the Iowa Trust Code.  (*Id.*).  Plaintiff, on the other hand, argues the Iowa Trust Code provision that protects persons who acted in good faith from a trustee only applies to persons who were, in fact, dealing with a trustee.  (Doc. 48, at 1-2).  According to plaintiff, Draut was never acting as trustee and thus, the code provision does not apply.  (*Id.*).

The Iowa Code provision cited by defendants provides that:

1.    With respect to a third party dealing with a trustee in the conduct of a transaction, if the third-party acts in good faith and for a valuable consideration and without knowledge that the trustee is exceeding the trustee's powers or is improperly exercising them, the following apply:

      *a.*     A third party is not bound to inquire as to whether a trustee has power to act or is properly exercising power and may assume without inquiry the existence of a trust power and its proper exercise.

      *b.*     A third party is fully protected in dealing with or assisting a trustee, as if the trustee has and is properly exercising the power the trustee purports to exercise.

2.    A third party who acts in good faith is not bound to ensure the proper application of trust property paid or delivered to the trustee.

IOWA CODE § 633A.4603. Minnesota law is essentially identical on this issue. MINN. STAT. § 501C.1012.

The Iowa Code unambiguously states that it applies to third parties who are dealing with a trustee in the conduct of the transaction. The code provision's language indicates it is intended to protect third parties who enter an agreement with a trustee and later find out that the trustee had no authority to enter into the agreement or had exceeded the scope of the trustee's authority. Thus, if Draut was exceeding her trustee powers, the law might protect defendants by their good faith dealing. The code provision does not, however, include any language that describes a situation in which a third party is protected in dealing with or assisting an individual under a mistaken impression that the individual was acting as a trustee.

Here, defendants are not entitled to protection under the Iowa Code as a third party acting in good faith. As the Court explained above, there is no evidence that Draut was acting in her role as trustee when she signed the lease with defendants. Because there was no evidence that Draut was acting as a trustee, the Court found that she was acting in her individual capacity. Thus, defendants were not dealing with a trustee, but with an individual when they signed the lease with Draut. Because the code only protects third parties dealing with trustees, defendants are not protected by the code provision here.

Case 5:19-cv-04014-CJW-MAR   Document 49   Filed 06/10/20   Page 21 of 28

## 2. *Passed Good Title*

Next, defendants argue Iowa law presumes the authority of the grantor in a conveyance of an interest in real estate. (Doc. 47-1, at 4). In support of their argument defendants cite to two Iowa code provisions. First, defendants assert that "Iowa law provides that '[e]very conveyance of real estate passes *all the interest of the grantor therein*, unless a contrary intent can be reasonably inferred from the terms used." (*Id.*, at 5) (quoting IOWA CODE § 557.3 (emphasis added by defendants)). Second, defendants assert that under Iowa law a trustee transferring an interest in real estate warrants that the transfer is effective and rightful, and thus, there is an implied warranty of authority that applies unless there is a clear statement to the contrary in the lease itself. (*Id.*) (citing IOWA CODE § 614.14(4)). Neither of the Code provisions cited provide a basis for upholding the validity of the lease here.

The Court first finds that defendants cannot rely upon Section 557.3 to uphold the validity of the lease. Iowa Code Section 557.3 provides: "Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." Section 557.3 is unambiguous and permits the grantor's interest to be transferred in its entirety. Draut, however, did not have any interest in the property when she signed the lease as an individual because she had conveyed the property to the trust via a warranty deed in 1998 and no longer had title to the land. Thus, she could no longer transfer any interest in the property to a third party because she had no such interest to convey.

The Court finds that Section 614.14(4) does not apply to the lease either. Section 614.14(4) provides: "Unless clearly provided to the contrary by the instrument of transfer to a purchaser, a trustee transferring an interest in real estate warrants to the transferee all of the following: . . . That the transfer by the trustee to the purchaser is effective and rightful." The plain language of Section 614.14(4) only refers to trustees making a

22

warranty. Nothing in the provision discusses a warranty made by an individual who conveys property. The issue again is whether Draut was acting as the trustee when she executed the lease. The Court has already found that there is no evidence Draut was acting as trustee and the Court need not reiterate its reasoning again here. Because Draut was not acting as a trustee, Section 614.14(4) has no applicability to the lease here.

Thus, the Court finds the Iowa Code sections that presume the authority of the grantor in a conveyance of real estate do not apply here and cannot serve as a basis for finding the lease valid.

### 3. Ratification

In defendants' response to plaintiff's Renewed Motion for Summary Judgment they state in their conclusion that "a question of fact exists whether Plaintiff's claim is barred by ratification or estoppel." (Doc. 47-1, at 12). Defendants' brief contains no other mention of ratification or its application to this case. Plaintiff asserts that this single statement falls short of defendants' burden of identifying a genuine dispute, and that it is not the Court's duty to speculate what was meant by this statement. (Doc. 48, at 4). Defendants did, however, raise the issue of ratification in their resistance to plaintiff's first motion for partial summary judgment and plaintiff responded to the arguments in his reply brief. (Doc. 33, at 4). Also, defendants assert that they incorporate their prior arguments into the brief in resistance to the renewed motion for summary judgment. (Doc. 47-1, at 1). Because the previous briefing contained arguments on ratification, the Court finds it would not be speculation to discuss defendants' ratification argument and will consider the argument here.

Ratification is based on the principle that a person should not be able to accept the benefits of a contract but deny his or her obligations under the contract. *Life Inv'rs Ins. Co. of Am. v. Estate of Corrado*, 838 N.W.2d 640, 647 (Iowa 2013). Further, ratification is meant to bind principals who take actions justifying a reasonable assumption they have

consented to the agent's actions. *See NuTech Seed, LLC v. Roup*, 212 F. Supp. 3d 783, 791 (S.D. Iowa 2015). According to defendants, Draut accepted the benefits of cash rental payments for the Clay County property so the obligations to lease the land under the contract must be upheld.

Defendants' arguments fail in two respects. First, for the doctrine of ratification to apply, there must be a principle-agent relationship. Defendants have offered no evidence that in leasing the property Draut the individual was acting as an agent of Draut the trustee or the Trust itself. Second, because Draut deposited the rent checks into her personal account (Doc. 48-1, at 6-7) the Trust itself never received any benefit from the lease. Thus, the principle that a party should not be able to accept the benefits of a contract but deny its obligations has no application here. There is no genuine issue of material fact, and the doctrine of ratification has no application here.

### 4. *Estoppel*

Defendants next argue that plaintiff should be estopped from denying the validity of the lease of the Clay County property. (Docs. 30-1, at 8-9; 47-1, at 11). Defendants raise their estoppel argument in at least three places. In their resistance to the Motion for Partial Summary Judgment defendants argued the trustee is estopped from denying the lease under the theories of promissory estoppel and equitable estoppel. (Doc. 30-1, at 8-9). In their resistance to the Renewed Motion for Summary Judgment defendants argue plaintiff should be estopped from claiming that Draut was required to provide a written notice to Draut stating that Draut, Trustee, could lease the Clay County property. (Doc. 47-1, at 11). Although it appears separately, defendants do not attach an independent theory of estoppel to their claim that plaintiff should be estopped from requiring written notice. As such, the Court will consider it as part of its analysis of promissory and equitable estoppel.

24

### a. *Promissory Estoppel*

Defendants first argue plaintiff should be estopped from denying the validity of the lease of the Clay County property under the doctrine of promissory estoppel. (Doc. 30-1, at 8). Under Iowa law, the elements of promissory estoppel are:

> (1) [A] clear and definite promise; (2) the promise was made with the *promisor's* clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 49 (Iowa 1999) (emphasis added). "A person basing a cause of action on equitable estoppel or promissory estoppel must demonstrate justifiable reliance on the defendant's promise, representation, or concealment of material facts." *Bruns v. Hartford Acc. & Indem. Co.*, 407 N.W.2d 576, 580 (Iowa 1987). "Because promissory estoppel is a form of equitable relief and applies only where a contract otherwise does not exist, a plaintiff may not assert a claim of promissory estoppel if the promise at issue is encompassed by a written and formal contract." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 942 (S.D. Iowa 2018) (citations omitted).

Defendants' promissory estoppel claim fails in four distinct ways. First, the existence of the lease itself precludes defendants from asserting promissory estoppel. There is already a contract between defendants' and Draut for the rental of the property. To the extent Draut individually breached that contract by failing to provide defendants possession of the Clay County property during the lease term, defendants have a claim at law against Draut (or her estate) for breach of contract. Defendants' equitable claim for promissory estoppel against the Trust, however, fails as a matter of law.

Second, promissory estoppel can only be asserted against the promisor, not a third-party who possesses the subject of the promisor's promise. Again, the Court must

differentiate between Draut the individual and Draut the trustee acting on behalf of the Trust. As the Court has repeatedly found, Draut entered the lease as an individual, thus any representation she made about the Clay County property was made in her individual capacity. Such representations cannot be used to bind the Trust.

Third, even if the Trust could be bound by Draut's individual representations, there is no evidence that defendants have relied to their substantial detriment on the promises. According to defendants they paid Draut rent for the 2018 crop year, but there is no allegation that they were denied access to the property in that crop year. Similarly, defendants have not alleged that they lost out on any other opportunities because they entered into the lease with Draut. Absent such facts in the record, defendants' promissory estoppel claim fails as a matter of law. Additionally, defendants' reliance was not justified because they could easily have determined the Trust owned the land. The Clay County conveyance was properly recorded and thus, defendants could have discovered Draut did not own the property.

Finally, defendants argue the equities support enforcement of the agreement. It is true defendants have farmed the property since 1980. It is also true defendants and Draut appear to have had a strong business relationship that each honored for several decades. The Court understands the value of these types of relationships to the land and between landowners and tenants and the Court does not consider these factors lightly. These considerations are not, however, enough to overcome an otherwise invalid lease. As the Court has noted several times, trust formalities are important and should be followed. To allow an individual to convey property to which she does not have title would be contrary to basic principles of property law and would render title meaningless. Adhering to established principles of property law outweighs the equities of finding the lease valid.

Further, defendants already received significant benefits from the lease. According to plaintiff, defendants paid below the fair market rental value for the property.

Defendants were also given the option of purchasing the land for 95 percent of its appraised value before the land went on the market. Even though the purchase price was high, it was discounted specifically for defendants and allowed them to avoid competing in the marketplace. In other words, defendants already received substantial benefits from the lease and were given preferential treatment throughout. Extending these benefits and giving defendants a continued discount on rental fees would not justify enforcing an invalid lease.

### b. Equitable Estoppel

In addition to their promissory estoppel claim, defendants also argue plaintiff should be prevented from denying the validity of the lease on an equitable estoppel theory. (Doc. 30-1, at 9). Equitable estoppel is "applied to prevent fraud and injustice and exists wherever a party cannot in good conscious gainsay his own acts or assertions." *Dart v. Thompson*, 154 N.W.2d 82, 86 (Iowa 1967). To succeed on an equitable estoppel claim a party must show "(1) a false representation or concealment of material facts; (2) lack of knowledge of the true facts on the part of the actor; (3) an intention that the promise be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury." *Walters v. Walters*, 203 N.W.2d 376, 379 (Iowa 1973).

As the Iowa Supreme Court explained, equitable estoppel only applies against the person making the representation at issue. *See Dart*, 154 N.W.2d at 86 (noting that equitable estoppel applies to prevent a party from improperly benefitting from "*his own* acts or assertions" and noting that the doctrine prevents "a party [from making] a claim inconsistent with *his former declarations or conduct*." (emphasis added)). Draut misrepresented she could lease the land in her individual capacity, and thus her misrepresentations cannot estop Draut acting as trustee or plaintiff as trustee from denying the validity of the lease. Also, equitable estoppel requires not just reliance, but "justified reliance" on the false representation. *Bruns*, 407 N.W.2d at 580. The deed to

27

the Clay County property which showed the Trust's ownership was a public record, and thus defendants could not have justifiably relied on the representation that Draut individually had authority to lease the property. Thus, as a matter of law plaintiff is not equitably estopped from denying the validity of the lease.

## V. CONCLUSION

For these reasons, plaintiff's Renewed Motion for Partial Summary Judgment (Doc. 42) is **granted**. The Court finds the lease between defendants and Ruth A. Draut dated January 18, 2018, is void and of no effect. The parties did not ask the Court to consider the remaining claims or dismiss this action. The Court thus declines to rule of the remaining claims here.

**IT IS SO ORDERED** this 10th day of June, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa